UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DINA J. FIGGS,

          Plaintiff,

-vs-                                                Case No. 5:10-cv-478-Oc-18TBS

MICHAEL J. ASTRUE, Commissioner
of Social Security,

          Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

Dina J. Figgs ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). She alleged inability to work due to back, chest, neck, shoulder, leg, knee, and foot pain; shortness of breath; asthma; dizziness; high blood pressure; GERD; carpal tunnel syndrome and right hand numbness; heel spurs; headaches; depression, mood swings, nervousness, and problems with memory and concentration. Tr. 159, 181, 195.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. §636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking the factual allegations on appeal.

In November 2006, Plaintiff filed an application for a period of disability and DIB and an application for SSI, alleging a disability onset date of February 18, 1999, which was later amended to December 31, 2005. Tr. 27, 125-30, 131-36. The Social Security Administration ("SSA") denied Plaintiff's applications initially and upon reconsideration. Tr. 59-62, 63-66, 69-70, 71-73.

Plaintiff then requested and received a hearing before administrative law judge ("ALJ") Philemina M. Jones on May 5, 2009, during which Plaintiff, who was represented by counsel, and Robert Bradley, a vocational expert ("VE") testified. Tr. 20-48. At the time of the hearing, Plaintiff was 45 years old. Tr. 26. On September 2, 2009, the ALJ issued this final decision, finding Plaintiff not disabled and denying her claim. Tr. 11-19. Plaintiff filed a Request for Review by the Appeals Council, which was denied. Tr. 1-5, 124. Accordingly, ALJ Jones' September 2, 2009 decision was the final decision of the Commissioner. Tr. 10. On October 7, 2009, Plaintiff timely filed her Complaint with this Court. (Doc. 1). Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

On appeal, Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to properly evaluate the opinion of Dr. Henderson, a consultative psychologist and failed to articulate good cause for discrediting the opinion of Dr. Diaz, one of Plaintiff's treating physicians. Plaintiff also argues that the ALJ erred by failing to find that Plaintiff's knee condition was a severe impairment. Lastly, Plaintiff

argues that the ALJ improperly relied on the testimony of the vocational expert because the hypothetical question failed to adequately reflect all of Plaintiff's limitations.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ applied proper legal standards and the ALJ's Decision is supported by substantial evidence. Accordingly, it is recommended that the ALJ's Decision be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§404.1520 and 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

Here, the ALJ performed the required five-step sequential analysis. Tr. 26-40. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 31, 2005 through September 2, 2009, the

date of the ALJ's decision. Tr. 13. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, carpal tunnel syndrome, asthma, depression, plantar fasciitis, headaches, and back and neck pain. Tr. 13-14. At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 14-15.

Next, the ALJ found that Plaintiff retained the RFC to:

perform sedentary work as defined in 20 CFR 404.1567(c) and 416.967(c). She can occasionally climb ropes, ladders, and scaffolds, can perform simple routine, repetitive tasks, should avoid concentrated exposure to fumes, odors, dust gases an[d] poor ventilation, and should avoid concentrated exposure to temperature extremes, humidity, and hazards.

Tr. 15.

At step four, the ALJ relied in part on the testimony of the VE in finding that Plaintiff is unable to perform any past relevant work. Tr. 17. Then, at step five, the ALJ determined there were other jobs that existed in significant number in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC. Tr. 18. Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from December 31, 2005, the amended disability onset date, through September 2, 2009, the date of the ALJ's decision. Tr. 19.

## III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing Richardson v. Perales, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(per curiam)("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'")

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991)(per curiam.) "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote, 67 F.3d at 1560, see also

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)(stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings.)

### IV. Discussion

A. ALJ's RFC Assessment is upported by substantial record evidence

Plaintiff argues that the ALJ's RFC finding is not supported by substantial record evidence because the ALJ failed to properly consider the evidence related to Plaintiff's mental impairments and her knee impairment.

#### Mental RFC Assessment

Plaintiff contends that the ALJ failed to properly consider the consultative evaluation of Daniel J. Henderson, Ph.D. in assessing her mental RFC. The ALJ limited Plaintiff to "simple routine, repetitive tasks." Tr. 15. In making this finding, the ALJ considered Dr. Henderson's evaluation and accorded his opinion only "some weight" because it was unsupported by other evidence in the record. Tr. 17.

There is no question that the ALJ mis-characterized Dr. Henderson's findings. Contrary to the ALJ's assertion, Dr. Henderson found that Plaintiff had memory deficits -- i.e., auditory memory was estimated to be in the 1st percentile, as measured by a digit span task; she was able to perform only one of the calculations in the serial sevens task; and her short-term memory was impaired, as measured by a time-delayed three word challenge. He also found that Plaintiff's executive functioning (such as concept formation and abstracting) appeared limited and her estimated level of intellectual functioning was in the low average range;

-6-

and concluded that Plaintiff's prognosis was "deemed to be poor to fair," diagnosed her with major depressive disorder, recurrent, severe without psychotic features, and assigned a GAF of 40.

However, the ALJ's failure to properly characterize Dr. Henderson's findings is not dispositive of the issue. As a one-time examining physician, Dr. Henderson's opinion is not entitled to any deference. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians). Moreover, in discrediting Dr. Henderson's opinion, the ALJ found that the severe limitations found by Dr. Henderson were not consistent with other record evidence. See 20 C.F.R. §§404.1527(d)(4), 416.927(d)(4)("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); see also, 20 C.F.R. §§404.1545(e), 416.945(e)("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence. . ."). The ALJ noted that such severe mental limitations were "inconsistent with the fact that the claimant was able to work, and according to her employer, her work performance has apparently been good, as they made efforts to accommodate her due to her work performance." Tr. 17; see also, Tr. 212 (letter from employer stating that "due to her length of employment and her work performance with our company, we have made every effort to accommodate her"). Moreover, the ALJ noted that despite the low GAF score given by Dr. Henderson,

-7-

Plaintiff "has been able to work, to drive, to live alone, or with her daughter, and to take care of her finances." Tr. 17.[2] The ALJ also correctly noted the absence of any mental health treatment records to support Dr. Henderson's evaluation.[3]

Accordingly, the ALJ properly considered Dr. Henderson's opinion in assessing Plaintiff's mental RFC.

Moreover, the ALJ's mental RFC finding is supported by the February 6, 2007 consultative evaluation by Samer Choksi, M.D. Although Plaintiff reported memory/concentration problems, Plaintiff stated that she has no trouble remembering events or birth dates. (R. 341). Dr. Choksi found that Plaintiff was alert and oriented times three; affect and mood tone were normal; and intellectual functioning appeared normal. (R. 344). Dr. Choksi further noted that Plaintiff had

---

[2] Dr. Henderson's GAF assessment would be entitled to limited weight in determining Plaintiff's functional limitations. Although GAF scores frequently have been cited in Social Security disability benefits determinations, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that the GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005)(unpublished)(quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2001 WL 1173632 (Aug. 21, 2000.) Indeed, as noted by a court in this district, "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)(unpublished)(citing DeBoard v. Commissioner of Social Security, 211 F.App'x at 415-16).

[3] Although not raised by Plaintiff, on October 3, 2008 and again on January 30, 2009, unnamed psychiatrists from Thomas E. Langley Medical Center completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" concluding that Plaintiff's ability to perform all work-related mental activities was poor. Tr. 422-23, 425-26. The ALJ discounted these Medical Source Statements because there were no treating source treatment notes to support the very severe mental limitations. Tr. 17.

received no formal diagnosis of depression and had not been prescribed any medication. Id. Likewise, the ALJ's mental RFC finding is supported by the non-examining state agency consultants. In March 2007, Lee Reback, Psy.D., reviewed the records and found that Plaintiff was able to understand, remember, and carry out very short and simple instructions, make simple work-related decisions, relate well to others and respond appropriately to changes in the work setting . Tr. 360-63, 364-77. In June 2007, James Mendelson Ph.D. reviewed the records and concluded that Plaintiff's affective disorder was not severe and resulted in only mild difficulties in maintaining concentration, persistence or pace. Tr. 400-13.

Accordingly, substantial evidence supports the ALJ's mental RFC assessment.

Physical RFC Assessment

Here, the ALJ found that Plaintiff could perform sedentary work with some postural and environmental limitations. The only medical opinion evidence that Plaintiff could not perform sedentary work was the opinion of Tanya Diaz, M.D., Plaintiff's treating physician at Thomas E. Langley Medical Center. In a letter dated March 3, 2009, Dr. Diaz stated that Plaintiff has a history of chronic back pain and knee pain which was evaluated by MRI on 11/07 "with findings on Right knee of medial compartment osteoarthritis, extruded medial meniscus, tear of the past horn of the medial meniscus and joint effusion and on Left knee of medial

extrusion of the mid body of the medial meniscus, severe chondromalacia, joint effusion and osteophytic changes." Tr. 427. Dr. Diaz further noted that Plaintiff could not afford to see an orthopedic specialist. Dr. Diaz opined that Plaintiff "is unable to work and will need evaluation and possible surgery of her knees and hip conditions."

Dr. Diaz also completed a Cervical and Lumbar Spine Medical Source Statement. Tr. 428-33. Dr. Diaz opined inter alia that Plaintiff could rarely lift 10 pounds and would need to take unscheduled breaks approximately every 45 minutes for at least 10 minutes at a time during which she would need to lie down. Dr. Diaz further opined that Plaintiff could rarely climb ladders and stairs. She noted that due to Plaintiff's impairments she likely would be absent from work more than four days per month.

Contrary to Plaintiff's assertion, the ALJ adequately discussed Dr. Diaz's opinions. The ALJ expressly stated that she had considered Exhibit 21F and 22F, which were Dr. Diaz's March 2009 letter and Medical Source Statement. Tr. 17. While the ALJ did not expressly state what weight she was according to Dr. Diaz's opinion, it is readily apparent from her decision, that she accorded it little weight.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary. Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440

(11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986).

Here, the ALJ articulated two reasons for discrediting Dr. Diaz's March 2009 opinion. First, the ALJ noted that Dr. Diaz's opinion was not supported by the objective medical records. Tr. 17. The ALJ explained that although Dr. Diaz "indicates numerous problems that prevent Plaintiff from working [in her March 2009 letter]", the objective medical records do not support the assessment. Tr. 17.

As discussed below, the Court agrees that Dr. Diaz's opinion is inconsistent with other medical evidence of record.

Plaintiff stands 5'2" and weighs 280 pounds. Tr. 158. Plaintiff has a history of asthma for which she has been treated with oral medications, inhalers and nebulizers. (Tr. 327, 358). In October 2005, Plaintiff was injured in a motor vehicle accident, following which she reported back pain, right hand numbness and dizziness when turning her head to the left. (Tr. 236-49, 331). In January 2006, Plaintiff was seen by Lewis J. Herzburn, M.D. who diagnosed her with right carpal tunnel syndrome, and recommended bracing of her right wrist. Tr. 271-74, 301-04. Other than tenderness to palpation at the posterior cervical region and mild restriction of her cervical range of motion, Dr. Herzbrun's findings were mostly normal, including 5/5 motor strength in all major muscle groups and intact sensation. Tr. 271-72. Electrodiagnostic testing showed no evidence of any active right cervical radiculopathy, ulnar neuropathy, peripheral polyneuropathy, or myopathy. Tr. 272, 302.

The ALJ noted that by February 2006, Plaintiff's own treating chiropractor, John F. Heiligenthal, D.C., opined that Plaintiff had reached maximum medical improvement and limited Plaintiff to light work activity, lifting up to twenty pounds of force occasionally and no more than ten pounds frequently. Tr. 17, 308. The regulations permit the ALJ to consider the opinion of a treating chiropractor in assessing the RFC. See 20 C.F.R. §§404.1513(d), 416.913(d); SSR 06-3p (the

Commissioner may use evidence from "other sources", including chiropractors to show the severity of the individual's impairment(s) and how it affects the individual's ability to function).

In March 2007, Plaintiff reported right wrist pain and swelling, however, as the ALJ noted, radiographs showed an essentially normal right wrist and normal feet. Tr. 17, 388-91.

The ALJ further noted that while Plaintiff complained of back pain, there was no objective evidence to support the degree of pain indicated. Tr. 17. Indeed, from February 2006 -- the date that Dr. Heiligenthal found Plaintiff could perform light work -- the records show that Plaintiff was treated by a doctor for back pain on only two other occasions. Tr. 387 (April 4, 2007 reported constant thoracic back pain); Tr. 414 (August 8, 2007 reported back pain for over one year that had been worsening for past month).

With respect to her knee condition, Plaintiff reported bilateral knee pain on November 28, 2007 and again on January 10, 2008. Tr. 420, 421. MRI results were referenced in these treatment notes (although not included in the record) and it was noted that Plaintiff had a meniscus tear. There are no further treatment records after January 10, 2008 in the record before the Court. In her March 2009 letter, Dr. Diaz discussed Plaintiff's knee condition and the MRI in greater detail. The mere diagnosis of an impairment, however, is not enough to render Plaintiff disabled. It is the functional limitations or restrictions caused by the impairments,

not the impairments themselves, which may impact an individual's ability to work. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.") Here, the two treatment records, neither of which identify any functional limitations, do not establish that Plaintiff's knee condition causes functional limitations that would prevent Plaintiff from performing sedentary work.

Likewise, although Plaintiff has been diagnosed with bilateral calcaneal spurs and plantar fasciitis (Tr. 292, 415-18) and Dr. Diaz mentioned in her March 2009 opinion that Plaintiff has developed right hip pain (Tr. 327), the record does not support a finding that these conditions result in functional limitations that would impact Plaintiff's ability to perform sedentary work.

The ALJ's RFC finding also is supported by the February 2007 consultative evaluation by Samer R. Choksi, M.D. Tr. 15, 340-44. While Dr. Choksi noted that Plaintiff was unable to squat or heel-to-toe walk, he also noted that her gait was normal and she walked without an assistive device. Moreover, the ALJ noted that both non-examining state agency consultants opined that Plaintiff was capable of performing medium work activity with some postural and environmental limitations. Tr. 17, 349-56, 392-99. While the ALJ ultimately found that Plaintiff only could perform

sedentary work, the opinions of these non-examining consultants offers further support for the ALJ's decision to discredit Dr. Diaz's extreme opinion.

Moreover, the ALJ found that Plaintiff's own testimony regarding her daily activities -- i.e., that she worked seasonally, drove, and lived alone or with her daughter -- were inconsistent with Dr. Diaz's opinion that Plaintiff was unable to perform even sedentary work. Tr. 17, 28-30, 34; see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004)(inconsistency between Plaintiff's reported activities and treating physician opinion of functional limitations was legitimate basis for discrediting treating physician).

Finally, Dr. Diaz's opinion that Plaintiff was disabled and unable to work is an issue reserved to the Commissioner. See 20 C.F.R. §§404.1527(e), 416.927(e) (issues such as whether a claimant is "disabled" or "unable to work" are "not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability"); see also, SSR 96-5p(explaining that opinions on issues reserved for the Commissioner "even when offered by a treating source, . . . can never be entitled to controlling weight or be given special significance"). Thus, while the ALJ could consider Dr. Diaz's opinion that Plaintiff is unable to work, she was not required to give it any weight.

Accordingly, upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court finds that the ALJ articulated good cause for rejecting the opinions of Dr. Diaz as a treating physician. As the fact finder, the

ALJ was entitled to weigh the evidence as she did to discount Dr. Diaz's opinion. This Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004)).

Accordingly, for these reasons, substantial evidence supports the ALJ's physical RFC assessment.

B. Failure to find knee condition was severe impairment is not reversible error

Plaintiff argues that the ALJ erred at step two by failing to find that her knee condition was a severe impairment. At step two of the sequential analysis, the ALJ reviewed the medical evidence and concluded that Plaintiff had several severe impairments. As such, "the ALJ could not have committed any error at step two because [s]he found that [Plaintiff] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." Farrington v, Astrue, No. 3:09-cv-94-J-TEM, 2010 WL 1252684, at *4 (quoting Council v. Barnhart, No. 04-13128, at *4 (11th Cir. 2004) (per curiam) (unpublished)).

Morever, after considering the evidence, the ALJ found that Plaintiff's condition limited her to sedentary work with the further limitations of occasionally climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to fumes, odors, dust, gases, poor ventilation, temperature extremes, humidity, and hazards. As discussed above, Plaintiff has failed to show that her knee condition, whether severe or not severe, caused any additional limitations on her ability to work.

C.  The ALJ properly relied on the VE's testimony.

At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. Phillips, 357 F.3d at 1239. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. Id. at 1239-40. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which reflects Plaintiff's impairments and includes those limitations supported by the record. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)(per curiam); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999.)

Here, Plaintiff contends that the ALJ's reliance on the VE was improper because the hypothetical failed to include all of Plaintiff's limitations.   As an initial matter, based on the above conclusions that the ALJ properly discounted Dr. Henderson's opinion and Dr. Diaz's opinion, the ALJ did not err by failing to include the limitations identified by those doctors in the hypothetical.

Plaintiff also asserts that the ALJ failed to include limitations found by Dr. Reback, a state agency consultant , who completed a Psychiatric Review Technique Form ("PRTF")[4]  -- i.e., moderate limitations in the claimant's ability to understand and

---

[4] The PRTF requires adjudicators to assess an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listings of Impairments, and summarized on the PRT. See SSR 96-8p.

-17-

remember detailed instructions; moderate limitations in the ability to carry out detailed instructions; moderate limitations in the ability to maintain attention and concentration for extended periods; and moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Doc. 19 at 19, Tr. 360-61. The ALJ determined at step three that Plaintiff's mental impairments caused a moderate limitation in maintaining concentration, persistence and pace. Tr. 15.

The Eleventh Circuit recently has held that when the ALJ finds that a claimant is limited in maintaining concentration, persistence or pace as part of the PRTF employed at steps two and three, the ALJ must account for those limitations in the RFC assessment. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011). Limitations to simple, routine tasks or unskilled work, typically are not sufficient to account for a claimant's moderate limitations in concentration, persistence or pace. Id. at 1180 (citing Stewart v. Astrue, 561 F.3d 679, 684-85 (7th Cir. 2009)(per curiam)(finding that restricting hypothetical question to simple, routine tasks that do not require constant interactions with coworkers or the general public was insufficient to account for limitations of concentration, persistence and pace). However, the Winschel court recognized that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Id.

Here, the ALJ's decision is consistent with <u>Winschel</u> because there is sufficient medical evidence to support the ALJ's implicit finding that Plaintiff can perform "simple routine, repetitive tasks" despite her moderate limitations in concentration, persistence and pace.  As an initial matter, in his more detailed Mental RFC Assessment, Dr. Reback opined that in the category of sustained concentration and persistence, Plaintiff could carry out very short and simple instructions, but that difficulties would exist with detailed instructions.  Tr. 360-63. In addition, the other non-examining consultant, James Mendelson Ph.D. reviewed the records in June 2007 and concluded that Plaintiff's affective disorder was not severe and resulted in only mild difficulties in maintaining concentration, persistence or pace. Tr. 400-13.   Finally, as discussed above, substantial record evidence supports the ALJ's RFC determination that Plaintiff can perform "simple routine, repetitive tasks."

Because the hypothetical question posed to the VE accounted for all of Plaintiff's impairments and credible limitations, Tr. 46-47, the ALJ properly relied on the VE's testimony.

## V.  Conclusion

For the reasons discussed above, it is respectfully RECOMMENDED:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. §405(g) AFFIRMING the Commissioner's decision.

2. That the Clerk of Court be directed to close the file.

RESPECTFULLY RECOMMENDED at Ocala, Florida, on October 19, 2011.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

The Honorable G. Kendall Sharp
Senior United States District Judge

Counsel of record